# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MELISSA MURPHY, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-09-170-JHP-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Melissa Jane Murphy requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on February 14, 1977, and was thirty-one years old at the time of the administrative hearing. She has a tenth grade education and no past relevant work experience (Tr. 19). The claimant alleges inability to work since August 1, 2006 due to attention deficit hyperactivity disorder (Tr. 107).

**Procedural History**

On August 8, 2006, the claimant applied for supplemental security income payments under Title XVI of the Social Security Act. That application was denied. ALJ Michael Kirkpatrick conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated November 24, 2008. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the ability to perform medium work, *i. e.*, that claimant could lift and carry up to 50 pounds occasionally and 25 pounds frequently, sit, stand, and walk for cumulatively six hours in an eight hour workday respectively, but that claimant should avoid environment which expose her to respiratory irritants such as dust and fumes and

was limited to simple, routine, unskilled tasks with no interaction with the general public (Tr. 15). Although the claimant had no past work experience, the ALJ concluded that she was nevertheless not disabled because there were jobs she could perform in the national economy, *i. e.*, assembler, electrical assembler, and bench assembler (Tr. 20).

**Review**

The claimant contends that the ALJ erred by failing to properly consider all of her impairments at step four in his formulation of her RFC. Specifically, the claimant argues that the ALJ erred by failing to properly consider her mental limitations, her migraine headaches and her use of a nebulizer to treat her asthma. The undersigned Magistrate Judge finds that the ALJ *did* fail to consider claimant's mental limitations and her use of a nebulizer in formulating her RFC, and the decision of the Commissioner should therefore be reversed.

The medical evidence reveals that claimant has had longstanding issues with her mental health. The claimant received mental health treatment from the Mental Health Services of Southern Oklahoma (MHSSO) in 2005. On October 14, 2005, in her initial mental health assessment at that facility, the claimant self-reported the possibility of multiple personalities, and expressed a desire to get her "life back together" (Tr. 168). Leonda Seamster, M.S., L.P.C., diagnosed claimant with bipolar and personality disorder, and assessed her Global Assessment of Functioning (GAF) score at 41 (Tr. 178). She assessed claimant at having moderate to severe mood affect, *i. e.*, frequent, sometimes incapacitating, mood swings, frequently high anxiety, and occasional suicidal thoughts

without a plan, and moderate to severe difficulty with interpersonal relationships, *i. e.*, no close friendships and conflict with others at least once a week (Tr. 173-74). Ms. Seamster found that claimant had marked to severe anger, hostility, fear, anxiety, apprehension, and impaired attention span (Tr. 181). A few days later, the claimant appeared for a psychosocial evaluation at MHSSO where she reported that her "life turns upside down" and that she "[c]ries daily" (Tr. 182).

Claimant was also referred to M. Gerald Ball, Ph.D., for a mental status evaluation on October 26, 2006 (Tr. 191-92). At that evaluation, the claimant reported that she had trouble remembering to eat, engages in no pleasurable activities, and that her "mind is constantly running" (Tr. 191). The claimant reported that she would get up at 4 a.m. to get her children ready for school, clean compulsively until 4 p.m. (when she picked her children up from school), and got about an hour of sleep per day (Tr. 192). Dr. Ball found claimant to be suffering from major, recurrent, severe depression and assigned a GAF score of 42 (Tr. 192).

On May 14, 2007, claimant again sought treatment from Leonda Seamster at the Mental Health and Substance Abuse Centers of Southern Oklahoma (MHSAC), and yet another intake assessment was performed (Tr. 445). Here, the claimant reported that she had a "history of violent marriage which started at age 13" and that she had also been a victim of child abuse (Tr. 446). The claimant was found to have an irrational distrust of others, was unable to adjust to community situations, and had poor impulse control (Tr. 448). At this time, claimant was assigned a GAF score of 49 (Tr. 451). Treatment notes

from MHSAC in June 2007 indicate that claimant reported hearing two distinct voices, whom she named "Summer" and "Shadow", that purported to "tell her to hurt someone" (Tr. 555). Apparently, as a result of acting on these voices, claimant hit her husband in the head with a hammer in 2006 and had recently woke up with a knife in her hand (Tr. 555). In a Multiaxial Assessment performed in November 2007, claimant was diagnosed with unspecified schizophrenia, mixed, severe bipolar affective disorder (characterized by psychotic behavior), and borderline personality disorder (Tr. 541-42).

The claimant also testified as to her use of a home oxygen machine and nebulizer to aid in the treatment of her asthma (Tr. 28). The claimant stated that she used the nebulizer every four to six hours a day, *i. e.*, that she uses "it about three times during the day and in mid-morning hours [she] use[s] it four times, between 2:00 and 5:00" (Tr. 29), with each use lasting about 30 minutes (Tr. 29). The medical evidence confirms that the claimant was being treated with both home oxygen and a nebulizer, *i. e.*, ipratropium bromide inhalation solution .02% (Tr. 436, 525, 536).

The undersigned Magistrate Judge finds that the ALJ failed to consider relevant medical evidence in formulating the claimant's RFC in two respects. First, the ALJ did not properly evaluate the claimant's mental impairments because he did not fully discuss the opinions of Dr. Gerald Ball and Leonda Seamster, both of whom assigned GAF scores between 41 and 50 on *three separate occasions* (Tr. 178, 192, 451). "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *see Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003) [unpublished

opinion], "[a] GAF score of fifty or less . . . *does* suggest an inability to keep a job." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [emphasis added] [unpublished opinion], *citing Oslin*, 69 Fed. Appx. at 947.[2] The ALJ should have considered such low GAF scores and whether they were due to occupational factors. *See, e. g.*, *Givens v. Astrue,* 251 Fed. Appx. 561, 567 n.4 (noting that "the Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job[,]" but finding that "[e]ven assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.").

The ALJ *did* mention, albeit briefly, Dr. Ball's opinion and treatment notes from MHSAC, but essentially only mentioned the portions of those opinions and notes which supported his conclusion regarding her mental health limitations, *inter alia*, that claimant had difficulty remembering things but "demonstrated adequate short and long term memory and memory control on objective testing" (Tr. 14), which is improper. *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he

---

[2] "[A] GAF score between 41 and 50 indicates [s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." *Lee*, 117 Fed. Appx. at 678 [quotation omitted]. "A GAF score of 51-60 indicates moderate symptoms, such as flat affect, or moderate difficulty in social or occupational functioning." *Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) [quotation omitted].

chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Second, the ALJ failed to discuss the effect the claimant's use of a nebulizer might have on her ability to complete a normal workday. *See, e. g., Klitz v. Barnhart*, 180 Fed. Appx. 808, 810 (10th Cir. 2006) ("Although the ALJ acknowledged Ms. Klitz's use of the nebulizer, he never addressed any effect it might have on her ability to work . . . . The fifteen to twenty-five minute process of using the nebulizer one or two times a day on two or three days a week may be disruptive of a normal work day and affect [a claimant's] ability to perform the jobs the VE identified and on which the ALJ based his decision."), *citing Eback v. Chater*, 94 F.3d 410, 411-12 (8th Cir. 1996) (discussing how the particularities of a claimant's need to use a nebulizer could affect the ability to perform all the duties of a job). Such consideration by the ALJ was particularly important in light of the claimant's being prescribed a nebulizer in addition to an inhaler (Tr. 436, 525, 536) and her testimony that she used the nebulizer multiple times throughout the day with each application taking about 30 minutes (Tr. 29).

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the claimant's mental impairment and her need to use a nebulizer at work. If such analysis results in modifications to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

As set forth above, the undersigned Magistrate Judge **PROPOSES** a finding that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. The undersigned Magistrate Judge accordingly hereby **RECOMMENDS** that the Commissioner's decision be **REVERSED** and the case **REMANDED** for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b)(2).

**DATED** this 15th day of September, 2010.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**